# EXHIBIT A

E-FILED
8/10/2018 2:50 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
18CV332813
Reviewed By: R. Walker

JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlaw.com
HAMMONDLAW, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, MD 21208
Tel:  (310) 601-6766
Fax:  (310) 295-2385

LAURA L. Ho (SBN 173179)
lho@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiff and Putative Class

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

| | |
|---|---|
| ALEJANDRO GUTIERREZ, individually and on behalf of all other similar situated individuals,<br><br>    Plaintiff,<br><br>vs.<br><br>FRIENDFINDER NETWORKS, INC., a Delaware Corporation,<br><br>    Defendant. | Case No.: **18CV332813**<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  **NEGLIGENCE;**<br>2.  **BREACH OF IMPLIED CONTRACT;**<br>3.  **INVASION OF PRIVACY;**<br>4.  **VIOLATION OF CALIFORNIA'S CUSTOMER RECORDS ACT, CIVIL CODE § 1798.80, *ET SEQ.*;**<br>5.  **VIOLATION OF CALIFORNIA'S ONLINE PRIVACY PROTECTION ACT, CAL. BUS. & PROF. CODE § 22575, *ET SEQ.***<br>6.  **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*;**<br><br>**JURY TRIAL DEMANDED** |

716671.2

Plaintiff ALEJANDRO GUTIERREZ ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, alleges the following claims and causes of action against Defendant FRIENDFINDER NETWORKS, INC. ("Defendant"), based upon personal knowledge as to Plaintiff's own acts, and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's counsel as follows:

## **SUMMARY OF THE CASE**

1.      Defendant operates an adult online dating site under the AdultFriendFinder trademark with the Internet address, www.adultfriendfinder.com ("AFF"). The AFF website, in operation since 1996, is designed to facilitate discreet adult relationships between individuals and groups who seek to find similar minded adults for sexual encounters and is described on the company website as the "World's Largest Sex & Swinger Community." While promising to keep its users' confidential personal information secure, Defendant failed to safeguard this information. As a result, in or about October 2016, a hacker or a group of hackers breached Defendant's system and downloaded two decades worth of information from approximately 339 million accounts, making the AFF security breach the second largest in the 21st Century, trailing only behind the massive Yahoo! breach.

2.      Of the 339 million accounts affected, approximately 71.9% belonged to users in the United States and 15 million belonged to users who had "deleted" their accounts. An additional 70 million users whose information was stolen were customers of other x-rated websites, which Defendant sold to Penthouse Global Media prior to the breach. It is believed that the stolen information included: e-mail addresses, passwords, whether or not a user was a VIP member, browser information, the last IP address used to log in, and user purchases, as well as other sensitive personal information, such as users' photographs ("Personal Identifiable Information" or "PII").

3.      AFF did not admit to the breach when it was contacted by a media source, but approximately a week later began to notify its customers of the breach by surfacing a message when a user logged into his/her account. But, this type of notice did not reach millions of users affected as, of the 700 million users AFF boasts, according to an analysis of the last login dates, over 200 million have not logged in since 2010, and 15 million of the compromised accounts were "deleted" accounts.

1

716671.2

4.      The October 2016 breach was not the first breach of Defendant's system.  Defendant's system was also hacked in 2015, exposing close to 4 million accounts, which contained sensitive personal information, such as sexual preference and whether the user was looking for extramarital affairs.  Given the "warning" Defendant received in 2015, it is baffling that Defendant did not take appropriate measures to secure its system, and just a year later allowed another massive breach to occur.

5.      Plaintiff brings this class action on behalf of himself and all similarly situated individuals in the United States who created an account(s) on www.AdultFriendFinder.com and whose personal identifying information was accessed, compromised, or stolen and/or released as a result of the AFF data breach in October 2016 ("National Class").  Plaintiff also brings this class action on behalf of a class comprised of himself and all similarly situated individuals in California who created an account(s) on www.AdultFriendFinder.com and whose personal identifying information was accessed, compromised, or stolen and/or released as a result of the AFF data breach in October 2016 ("California Class"). The members of the National Class and California Class are collectively referred to herein as the ("Class" or "Class Members"), except where otherwise noted in order to differentiate them.

6.      Plaintiff and Class Members suffered injury.  The security breach compromised their Personal Identifiable Information, which was used or is at risk of being used in fraudulent transactions around the world, as well as other invidious exposure.

## JURISDICTION

7.      This Court has jurisdiction over the claims of negligence and breach of implied contract.

8.      This Court has jurisdiction over Plaintiff's claim based on invasion of privacy.

9.      This Court has jurisdiction over Plaintiff's claim based on the violation of California's Customers Records Act, Civil Code § 1798.80 *et seq.*

10.     This Court has jurisdiction over Plaintiff's claim based on the violation of California's Online Privacy Protection Act, Bus. & Prof. Code § 22575 *et seq.*

716671.2

11.     This Court has jurisdiction over Plaintiff's claim arising from Defendant's unlawful/unfair/fraudulent business practices, under Cal. Bus. & Prof. Code § 17200 *et seq.*

### VENUE

12.     Venue is proper in Santa Clara County pursuant to California Code of Civil Procedure § 395(a). Defendant is located in Santa Clara County, California, many of the acts giving rise to the violations complaint of occurred in Santa Clara County or arose out of decisions made in Santa Clara County.

### PARTIES

13.     Plaintiff is a male who resides in Woodland Hills, California.  Plaintiff created an account with www.adultfriendfinder.com in approximately 1998.  As part of the process of creating his account, Plaintiff created a username and password and provided confidential personal information in reliance on Defendant's promise to safeguard his information.  Plaintiff also uploaded photographs of himself.  Plaintiff subsequently purchased points for the purpose of communicating with other AFF users.  In order to make purchases, Plaintiff was required to provide his full name, street address, and his credit card and/or debit card number and CVV code.  Plaintiff's information was compromised as a result of Defendant's security failures, which were released and reposted on other websites by unauthorized users.  As a result of such compromise, Plaintiff suffered losses and damages in an amount yet to be completely determinable as such losses and damages are ongoing. Had Plaintiff known that Defendant would not take industry standard measures to safeguard his information, he would not have sign up for an AFF account and would not have made purchases and entered his credit card information on the AFF website.

14.     Defendant FriendFinder Networks, Inc. is a privately-held corporation headquartered in Campbell, California, and is regularly engaged in the business of operating online dating websites, including www.adultfriendfinder.com.  Defendant also has offices in Florida.

///

///

///

716671.2

## FACTS COMMON TO ALL COUNTS

**A.    Defendant Collected Users' Personal Information and Assured Users That It Would Safeguard It.**

15.    Defendant is a merchant that owns, operates and controls several dating and entertainment sides, including a website branded as "Adult FriendFinder" found at adultfriendfinder.com, penthouse.com and cams.com.  AdultFriendFinder.com is a dating website marketed to persons 18 or older who desire to meet similar-minded adults for casual sexual relationships with individuals or groups.

16.    Defendant markets AdultFriendFinder.com to consumers in the United States as well as outside the United States.  The website has more than 85 million current users in 37 countries.  It is rated the fortieth most popular adult website in the United States.  Defendant markets the website through television, radio, billboard, and Internet advertisements.

17.    AFF boasts membership of over 700 million and has proven extraordinarily lucrative, yielding Defendant revenues more than $300 million annually.

18.    When users establish an account with AFF, users must provide Defendant with PII, including in some cases, debit and credit card information.

19.    For example, users are required to purchase points or subscriptions in order to initiate conversations with other members, which requires users to enter their credit or debit card information.

20.    AFF also encourages users to provide their PII by stating that failure to provide such information may result in users not being able to access some or all of AFF services.

///

///

///

CLASS ACTION COMPLAINT

716671.2

21.     Users enter on AFF's website sensitive personal information, such as first and last name, date of birth, billing address, photographs, sexual preferences, and more.

**What Information Do We Collect?**

During the registration process for, or while using, any of the FFN Websites, you may choose to provide us with certain "Personal Information" including:

- your name and email address,
- billing information,
- "Sensitive Personal Information", which includes your racial or ethnic origins, political or religious beliefs, or sexuality
- Content that you submit, including images, audio recordings, and text that may be of sexual nature or relate to sexual orientation or preferences
- Information about how you use the services, including content viewed and your interactions with other users

22.     Defendant's Privacy Policy posted on the AFF website explains the type of personal information it collects from account holders:[1]

23.     Defendant's Privacy Policy further describes the numerous instances during which Defendant collects its users' PII, which includes "When you register for an account or interact with our Services" "When you provide or share Personal Information within our Services" "When you communicate with us or sign up for promotional materials" "When you engage with our online communities or advertising" "When we collect Personal Information from third parties or publicly-available sources" "When we leverage and/or collect cookies or device IDs" "When we link you to other members without our Sites or Services", and in other instances.[2]

24.     Defendant encourages users to in fact provide their PII by restricting use of its website if information is not provided:

Providing your Personal Information to us is voluntary. However, if you do not provide your Personal Information to us, you will not be able to access some or all of our services.

---

[1] FRIENDFINDER NETWORKS INC.'S PRIVACY POLICY, at https://adultfriendfinder.com/go/page/privacy.html?who=r,FBg6ARA81X5JG92Q7xkp9jwHPP1JtwZ8fhfmvuOmxD1_grY2m9thVBVe1qTY/6i6OoUnj8iZ4fwr4jW_8xvk8H8LV9MjUNMhmpgi34fyU5oJF4aRzAl6p4nu3ZCOWrE1 (last visited May 29, 2018)

[2] *Id.*

716671.2

25.     Defendant also informs its users that it shares personal information provided to

it by them only under limited circumstances:[3]

26.     Defendant represented and warranted to Plaintiff and Class Members that their PII was

secure and would remain private.  In particular, Defendant represented: "FFN Websites use reasonable

**When and to Whom Will We Disclose Your Information?**

Due to the nature of many of the services provided by the FFN Websites, certain of your Personal Information will be disclosed to other Members. As an example, if you complete a "dating" profile and choose to disclose your religious affiliation or ethnic origin, this information will be available to other Members using the services on the applicable FFN Website. By providing this type of profile information to us, you have consented to the use and disclosure of your Personal Information in this manner.

We may share or transfer your Personal Information with our subsidiaries operating other FFN Websites so that they can send you information about their products or services that you may be interested in.

We also disclose Personal Information to our service providers (for example, credit card processing companies, billing services) as reasonably necessary or appropriate to provide services on the FFN Websites. Our service providers are legally required by us to protect your Personal Information. Because many of the FFN Websites operate or use service providers located in different countries, your Personal Information may be transferred to a country in which you do not reside, and while in that foreign country, may be accessible to its law enforcement authorities.

We may be required to disclose your Personal Information in order to comply with a court order, subpoena, search warrant, or a lawful request by public authorities, including to meet national security or law enforcement requirements. In addition, we expressly reserve the right to disclose your Personal Information when we have a good faith belief that disclosure is necessary to protect our rights, to enforce our agreements, policies, and rules governing your use of the FFN Websites, and/or to report information concerning a threat of serious injury or death.

We DO NOT sell or rent any of your Personal Information to third parties for marketing purposes without your express permission or consent. We may, however, disclose to third-party advertisers certain aggregated or hashed (i.e., encrypted) information in a manner that no longer reflects or references an individually identifiable user, for other marketing and promotional purposes.

When you provide your Personal Information and Sensitive Personal Information to us, you consent to our use and disclosure of that information as described in this Policy. If you do not want us to use or disclose your Personal Information as described in this Policy, do not provide it to us. We note that this may result in you being unable to access some or all of our services.

security measures to help protect and prevent the loss, misuse, and alteration of the information under

our control.  We use industry standard efforts, such as firewalls, to safeguard your Personal

Information …."

27.     Defendant assures its users that the privacy of its members was very important:[4]

We understand that the privacy of its members, subscribers, guests and/or visitors (collectively, "Members", "you" or "your") is very important. We developed this Policy to ensure that your privacy is protected while using any of the FFN Websites or services.

///

///

///

---

[3] *Id.*

[4] *Id.*

CLASS ACTION COMPLAINT

716671.2

**B.    Breach of Defendant's System, Defendant's Outdated Security Measures, And Defendant's Inadequate and Unreasonably Delayed Notice of the Breach**

28.    Despite the fact that Defendant's system suffered a breach in 2015, Defendant failed to take commercially reasonable/ industry standard measures to safeguard the PII of its users.

29.    Both breaches occurred by the same method of attack, highlighting that AFF failed to learn from its mistakes and take adequate measures to protect its users' PII.

30.    Upon information and belief, Defendant did not encrypt data and passwords are (or were at the time of the breach) stored in plain visible format, or with the poor Secure Hash Algorithm 1 ("SHA-1") that is not regarded as secure and has not been regarded as secure well before the October 2016 breach.

31.    Experts began discovering weaknesses in SHA-1 since before 2007, and it has been more than five years (or in approximately 2012 or 2013) since the National Institute of Standards and Technology removed all support for the protocol in favor of new cryptographic hash functions like next-gen family members SHA-256 and SHA-3.

32.    In or about October 2016, a hacker or a group of hackers breached Defendant's system and downloaded two decades worth of personal information of 339 million AFF users.

33.    Of the 339 million accounts affected, 15 million belonged to members who had actively deleted their accounts. Yet, Defendant failed to separate this information from active users or otherwise delete this data from its database(s).

34.    It is estimated that approximately 71.9% of the affected accounts belonged to users in the United States.

35.    Upon information and belief, users' data was published on the black market after it was downloaded.

36.    Plaintiff's account and personal information is among the information that was compromised in the breach.

37.    This massive data breach could have been prevented had Defendant taken the necessary and reasonable precautions to protect its users' information by using recognized industry standards to safeguard the information, not outdated encryption methods rejected by the industry years prior.

716671.2

**C.      Defendant's Notice to Its User of the Breach Was Delayed and Inadequate**

38.      After learning of the breach, Defendant failed to notify Plaintiff and Class Members in a timely manner and failed to take reasonable steps to inform Plaintiff and Class Members of the extent of the breach.

39.      The data breach was first reported by the media in October 2016.  Defendant, however, did not notify its members until in or about late November 2016.

40.      In or about early November 2016, Defendant was directly confronted by a reporter with information about the breach, but Defendant did not admit the breach at that time.  Penthouse Global Media had members whose information was stored in Defendant's system and was also affected by the breach.  Its CEO Kelly Holland confirmed in early November 2016 that her company was aware of the breach and was waiting for Defendant to provide a detailed scope of the breach.

41.      Finally, in or about late November 2016 Defendant began notifying its users/account holders of the breach.

42.      However, Defendant's notice did not reach everyone because Defendant notified its account holders only through a message window that appeared when users signed in to their accounts, and as reported by some users, through messages in their account inboxes.  Approximately 200 million

---

**Messages from AdultFriendFinder**

 **AdultFriendFinder**
**Dear Customer:**

We recently learned of a security incident that compromised certain customer usernames, passwords, and email addresses. Immediately upon learning this information, we took several steps to investigate the situation and retained external partners to support our investigation. Based on our investigation, no credit card or payment information was compromised.

While we have not been able to determine the volume of compromised information, we recommend you change your password. We encourage our members to read and follow the security recommendations available here.

11/20/2016 7:06 pm

---

8

716671.2

1  inactive users who did not access Defendant's website did not receive the notification provided on

2  Defendant's site: [5]

3  **D.     Plaintiff and Class Members' PII Information Is Valuable on the Black Market**

4         43.     The types of information compromised in the AFF data breach are very valuable to

5  identity thieves.  In addition to credit and debit card information, names, email addresses, recovery

6  email accounts, dates of birth, and passwords can all be used to gain access to a variety of existing

7  accounts and websites.

8         44.     Identity thieves can also use the PII to harm Plaintiff and Class Members through

9  embarrassment, blackmail or harassment in person or online, or to commit other types of fraud

10  including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and

11  obtaining government benefits.

12         45.     A Presidential Report on identity theft from 2008 states that:

13         In addition to the losses that result when identity thieves fraudulently open accounts or
           misuse existing accounts, . . . individual victims often suffer indirect financial costs,
14         including the costs incurred in both civil litigation initiated by creditors and in
           overcoming the many obstacles they face in obtaining or retaining credit.  Victims of non-
15         financial identity theft, for example, health-related or criminal record fraud, face other
           types of harm and frustration.
16

17         In addition to out-of-pocket expenses that can reach thousands of dollars for the victims
           of new account identity theft, and the emotional toll identity theft can take, some victims
18         have to spend what can be a considerable amount of time to repair the damage caused by
           the identity thieves.  Victims of new account identity theft, for example, must correct
19         fraudulent information in their credit reports and monitor their reports for future
           inaccuracies, close existing bank accounts and open new ones, and dispute charges with
20         individual creditors. [6]

21

22         46.     To put it into context, the 2013 Norton Report, based on one of the largest consumer

23  cybercrime studies ever conducted, estimated that the global price tag of cybercrime was around $113

24  billion at that time, with the average cost per victim being $298 dollars.

25

26  [5] Image taken from https://www.cybersecurity-insiders.com/adultfriendfinder-network-finally-comes-
    clean-to-members-about-hack/ (last visited June 1, 2018)

27  [6] The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan, Federal Trade
    Commission, 11 (April 2007), http://www.ftc.gov/sites/default/files/documents/reports/ combating-
28  identity-theft-strategic-plan/strategicplan.pdf.

716671.2

47.   The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the PII they have obtained.  Indeed, a Government Accountability Office study found that "stolen data may be held for up to a year or more before being used to commit identity theft."7 In order to protect themselves, Class Members will need to remain vigilant against unauthorized data use for years and decades to come.

48.   Once stolen, PII can be used in a number of different ways.  One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website.  The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity.  The dark web is notorious for hosting marketplaces selling illegal items, such as weapons, drugs, and PII.  Websites appear and disappear quickly, making it a very dynamic environment.

As stated above, data downloaded from AFF's website by hackers, which includes Plaintiff's and Class Members' PII, has, in fact, been offered for sale on the dark web.

49.   Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details.  During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

50.   In addition to PII, a hacked email account can be very valuable to cyber criminals.  Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.

**E.**   **The Extent of Injury Resulting From the Breach is Not Yet Known; Plaintiff and Class Members Are Exposed to Increased Risk of Identity Theft, Blackmail, and Other Harm For Years**

51.   As a result of the breach, Plaintiff and Class Members face increased risk of identity fraud, blackmail, and other potential harm for years to come.

---

7 Report to Congressional Requesters, U.S. Government Accountability Office, 33 (June 2007), available at www.gao.gov/new.items/d07737.pdf.

10

716671.2

52.     Plaintiff's and Class Members' PII will be indefinitely available to those who are willing to pay for it.

53.     Had Plaintiff and the Class Members known of the true facts about AFF they would not have registered and made purchases from AFF or would not have shared as much personal information on the AFF website.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on his own behalf and, pursuant to California Civil Procedure Code § 382, on behalf of a National Class and California Class, as defined above in paragraph 5.

55.     Plaintiff's claims are typical of the claims of the National Class and of the California Class.  Plaintiff and all members of the National Class and Plaintiff and all members of the California Class were injured through the uniform misconduct described above and assert the same claims for relief.

56.     The members of the National Class and the members of the California Class are so numerous that joinder of all members is impracticable.  On information and belief, hundreds of thousands, or more credit and/or debit cards may have been compromised, and the members of the Class are geographically dispersed.  Disposition of the claims of the proposed National Class and California Class in a class action will provide substantial benefits to both the parties and the Court.

57.     Plaintiff will fairly and adequately represent the interests of the Class.  Plaintiff has no conflict of interest with any member of the Class.  Plaintiff has retained competent and experienced counsel in complex class action litigation.  Plaintiff's counsel have the expertise and financial resources to adequately represent the interests of the Class.

58.     Common questions of law and fact exist as to all members of the National Class and the California Class and predominate over any questions solely affecting individual members of the National Class and the California Class.  Among the questions of law and fact common to the Plaintiff and the National Class and the California Class are the following:

716671.2

<u>For the California Class</u>

i. Whether Defendant represented to the Class that it would safeguard Class Members' PII;

ii. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

iii. Whether Defendant breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

iv. Whether Defendant failed to use reasonable care and commercially reasonable methods to secure and safeguard its users' private personal information;

v. Whether Plaintiff's and Class Members' PII was accessed, compromised, or stolen in the 2016 breach;

vi. Whether Defendant failed to timely notify Plaintiff and California Class Members of the breach;

vii. Whether Defendant took reasonable measures to determine the extent of the breach after it first learned of the same;

viii. Whether Defendant's method of informing users/consumers of the breach and the description of the breach was reasonable;

ix. Whether Defendant breached an implied contract with the California Class Members;

x. Whether Defendant violated Plaintiff's and California Class Members' privacy rights;

xi. Whether Defendant violated the requirements of California Civil Code § 1798.80 *et seq.*;

xii. Whether Plaintiff and Class Members are entitled to recover actual damages, statutory damages, and/or punitive damages;

<u>For the National Class</u>

i. Whether Defendant failed to use reasonable care and commercially reasonable methods to secure and safeguard its users' private personal information;

ii. Whether Defendant violated the Stored Communications Act, 18 U.S.C. § 2702;

iii. Whether Defendant's conduct was deceptive, unfair, and/or unlawful under Cal. Bus.

iv. & Prof. Code § 17200 *et seq.*;

12

716671.2

v. Whether Plaintiff and Class Members are entitled to restitution, disgorgement, and/or other equitable relief.

59. Class action treatment is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has been damaged or may be damaged in the future because of Defendant's unlawful, deceptive and/or negligent practices described above.  Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system and would prevent repetitious litigation relating to Defendant's wrongful actions and/or inactions.  The expense and burden of litigation would substantially impair the ability of Plaintiff and Class Members to pursue individual lawsuits to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violation of the law.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On behalf of Plaintiff and the California Class)**

60. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

61. Defendant had a duty to timely disclose to Plaintiff and the Class that a data breach had occurred, and their Personal Information had been compromised, or was reasonably believed to be compromised.

62. Defendant, by and through its above negligent acts and/or omissions, breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding their Personal Information, which was in Defendant's possession, custody, and control.

63. Defendant also breached its duty of care by failing to timely disclose to Plaintiff and Class Members that a breach of security had occurred, and their Personal Information had been compromised, or was reasonably believed to have been compromised.

64. But for Defendant's negligent and wrongful breach of its duties owed to Plaintiff and Class Members, their Personal Information would not have been compromised.

716671.2

65.     Plaintiff's and Class Members' Personal Information was compromised and/or stolen as a direct and proximately result of Defendant's breach of its duties as set forth herein.

66.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Class Members have suffered injuries and damages as alleged herein.

67.     Defendant's conduct was undertaken in bad faith, with malice, and/or was willful and wanton and in reckless and conscious disregard of the rights of the Plaintiff and the Class Members, which entitles the Plaintiff and Class Members to be awarded punitive damages or exemplary damages in an amount sufficient to punish and deter Defendant and also to deter other entities and persons from similar conduct in the future.

68.     Plaintiff on behalf of himself and the Class seeks compensatory damages and punitive damages with interest, attorneys' fees and costs, and any other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the California Class)

69.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

70.     Plaintiff and Class Members were required to provide Defendant with their Personal Information in order to register with Defendant's website and utilize its functions.

71.     Implicit in this requirement was a covenant requiring Defendant to take reasonable efforts to safeguard this information and promptly notify Plaintiff and Class Members in the event their Personal Information was compromised.

72.     Similarly, it was implicit that Defendant would not disclose Plaintiff's and Class Members' Personal Information.

73.     Notwithstanding its obligations, Defendant knowingly failed to safeguard and protect Plaintiff's and Class Members' Personal Information.  To the contrary, Defendant allowed this information to be disseminated to unauthorized third parties.

14

716671.2

74.     Defendant's above wrongful actions and/or inactions breached their implied contracts with Plaintiff and Class Members, which in turn directly and/or proximately caused Plaintiff and Class Members to suffer substantial injuries, as described above.

75.     Plaintiff on behalf of himself and the Class seeks actual and compensatory damages, injunctive relief, costs, expenses and attorneys' fees, and any other and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS, AND CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY
### (On behalf of Plaintiff and the California Class)

76.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

77.     Plaintiff and California Subclass Members had reasonable expectations of privacy in the private information Defendant mishandled.

78.     By failing to keep Plaintiff's and Subclass Members' private information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Subclass Members' privacy by:

   i.    Violating Plaintiff's and Subclass Members' right to privacy under California Constitution, Article 1, Section 1, by failing to protect Plaintiff's and Subclass Members' privacy and property that was disclosed to an unauthorized third party.

   ii.   Permitting intrusion into Plaintiff's and Subclass Members' private affairs in a manner that would be highly offensive to a reasonable person.

79.     Defendant had previous knowledge of its inadequate data security and thereby acted with reckless disregard, by failing to protect the personal information of the Plaintiff and Subclass Members.

80.     Defendant permitted invasion into Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by allowing misuse and/or disclosure of Plaintiff's and Class Members' private information without their informed, voluntary, affirmative and clear consent.

716671.2

81. As a proximate result of such misuse and disclosures, Plaintiff's and Class Members' reasonable expectations of privacy regarding their personal information was unduly frustrated and thwarted and they suffered a serious invasion of their protected privacy interests.

82. Having previous knowledge of data security inadequacies, Defendant's ongoing failure to protect Plaintiff's and Class Members' private information, and in allowing misuse and/or disclosure of that information, Defendant has acted in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

83. Plaintiff on behalf of himself and the California Subclass, therefore, seeks an award of punitive damages and any such other and further relief as this Court may deem just and appropriate.

## FOURTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S CUSTOMER RECORDS ACT
### Cal. Civ. Code §§ 1798.80, *et seq.*
### (On behalf of Plaintiff and the California Class)

84. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

85. "[T]o ensure that personal information about California residents is protected," the California Legislature enacted California Customer Records Act. This statute states that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." CCRACC § 1798.81.5.

86. Defendant is a "business" within the meaning of CCRACC § 1798.80(a).

87. Plaintiff and California Class Members are "customer[s]" within the meaning of the CCRACC § 1798.80(c) "who provide[d] personal information to [Defendant] for the purpose of purchasing or leasing a product or obtaining a service from the business." The information retained by Defendant constitutes "personal information" as defined in CCRACC § 1798.81.5(d)(1).

716671.2

88.     Pursuant to CCRACC § 1798.82(g), the unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information of over 339 million adultfriendfinder.com.  Customers constitutes a "breach of [its] security system."

89.     By keeping users' personal data within its custody and control longer than necessary, and by failing to properly and adequately dispose or make users' data undecipherable, Defendant violated CCRACC § 1798.81.

90.     By failing to implement reasonable security procedures and practices appropriate to the nature of Plaintiff's and California Class Members' personal information, Defendant violated CCRACC § 1798.81.5(b).

91.     Additionally, by failing to promptly notify all affected AFF website users that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Defendant violated § 1798.82 of the same title.

92.     As a direct and proximate result of Defendant's failure to implement and maintain reasonable security procedures and practices to protect Plaintiff's and California Class Members' personal and financial information, Plaintiff and California Class Members suffered damages, including, but not limited to, loss of and invasion of privacy, loss of property, loss of money, loss of control of their personal and financial nonpublic information, fear and apprehension of fraud and loss of control over their personal and financial information, the burden of taking actions to protect themselves from fraud or potential fraud.

93.     Plaintiff on behalf of himself and the California Class seeks all remedies available under CCRACC § 1798.84, including, but not limited to: (a) damages suffered by California Class Members, and (b) equitable relief.  Plaintiff on behalf of himself and the California Class also seeks reasonable attorneys' fees and costs under applicable law, and any such other and further relief as this Court may deem just and appropriate.

17

716671.2

## FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S ONLINE PRIVACY ACT
Cal. Bus. & Prof. Code § 22575, *et seq.*
(On behalf of Plaintiff and the California Class)

94.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

95.     AFF is a commercial website or online service that collects personally identifiable information through the Internet about individual consumers residing in California, and elsewhere, who use or visit its commercial Web site or online services, within the meaning of California Business and Professions Code § 22575(a).

96.     Defendant failed to adhere to their posted privacy policy concerning the care they would take to safeguard Plaintiff's and California Subclass Members' PII, and negligently and materially failed to adhere to their posted privacy policy with respect to the extent of their disclosure of users' data, in violation of California Business and Professions Code § 22576.

97.     As a result of Defendant's failures to adhere to their privacy policies and its violations of California Business and Professions Code § 22575, *et seq.*, Plaintiff and the Subclass have suffered injuries described in detail herein.

98.     Plaintiff, on his own behalf and on behalf of the putative classes, seeks all remedies available under California Business and Professions Code § 22575, *et seq.*

## SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")
Cal. Bus. & Prof. Code § 17200, *et seq.*
(On behalf of Plaintiff and the National Class)

99.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

100.    Defendant's conduct constitutes unfair and illegal and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq.*

101.    Defendant's conduct violated certain laws as alleged above.

716671.2

102.     Additionally, Defendant's conduct violated the Stored Communications Act, 18 U.S.C. § 2702 ("SCA"). Defendant provides, through its servers (which are under Defendant's control), an "electronic communication service to the public" within the meaning of the SCA because Defendant's services allow members of AFF to submit their Personal Information to the AFF website and allows members to communicate electronically with other members through Defendant's servers. Furthermore, Defendant provides an "electronic communication service to the public" within the meaning of the SCA because Defendant provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

103.     By failing to take commercially reasonable steps to safeguard sensitive Personal Information, even after Defendant was aware that users'/customers' Personal Information had been compromised, Defendant knowingly divulged customers' private communications and Personal Information, in violation of the SCA.

104.     Furthermore, Defendant knowingly retained information which it should have deleted, and which certain users who had deleted their accounts reasonably expected to be deleted and purged from Defendant's system, despite the reliance of the Class that such information had been deleted, and the despite the risk that such information would ultimately be divulged in a data breach or otherwise. Defendant thereby knowingly divulged customers' PII, in violation of the SCA.

105.     Through its servers, Defendant provides remote computing services to the public within the meaning of the SCA.

106.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, Defendant has knowingly divulged customers' Personal Information that was carried and maintained on Defendant's remote computing service in violation of the SCA.

107.     By engaging in the conduct described in paragraphs 101 through 106, above, in the course of doing business, Defendant engaged in unlawful business practices in violation of the California Business & Professions Code § 17200, *et seq.*

108.     By failing to adequately secure Plaintiff's and Class Members' Personal Information and private financial information, and failing to promptly notify Class Members of the breach,

716671.2

1    Defendant engaged in unfair business practices in violation of the California Business & Professions

2    Code § 17200, *et seq.* The gravity of the harm to Plaintiff and Class Members outweighed any utility

3    that Defendant's conduct may have produced.

4         109.    Defendant's failure to disclose information concerning the Data Breach directly and

5    promptly to affected customers, constitutes a fraudulent act or practice in violation of California

6    Business & Professions Code section 17200, *et seq.*

7         110.    Plaintiff suffered injury in fact and lost property and money as a result of Defendant's

8    conduct.

9         111.    Plaintiff seeks restitution and injunctive relief on behalf of the Class.

10                           **PRAYER FOR RELIEF**

11    WHEREFORE, Plaintiff requests the following relief:

12         A.      That the Court determine that this action may be maintained as a class action under

13    California Civil Procedure Code § 382, and define the National Class and California Class as requested

14    herein;

15         B.      That the Court award Plaintiff and the National Class and the California Class

16    appropriate relief, to include actual, compensatory, statutory and punitive/exemplary damages,

17    disgorgement, restitution;

18         C.      That the Court award Plaintiff and the National Class and the California Class

19    preliminary or other equitable or declaratory relief as may be appropriate by way of applicable law;

20         D.      That the Court award Plaintiff and the Class restitution, injunctive relief, attorneys' fees

21    and costs.

22         E.      Such additional orders or judgments as may be necessary to prevent these practices and

23    to restore to any person in interest any money or property which may have been acquired by means of

24    the violations; and

25         F.      That the Court award the National Class and California Class such other, favorable

26    relief as may be available and appropriate under the law or at equity.

27         G.      Pre- and Post-Judgment Interest;

28

716671.2

H.      Reasonable attorneys' fees and costs;

I.      And such other, further and different relief as the Court may deem just and proper.

Dated:  August 10, 2018                  Respectfully submitted,

HAMMONDLAW, P.C.

GOLDSTEIN, BORGEN, DARDARIAN & HO

Julian Hammond

Attorneys for Plaintiff

CLASS ACTION COMPLAINT

716671.2